UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ROMEO HEAGENS, | Case No. 2:25-cv-00634-BNW |
| Plaintiff, | **ORDER** |
| v. | |
| SHIMON GANON, | |
| Defendant. | |

In this personal injury suit against an international defendant, the parties dispute whether Defendant was properly served. Because Plaintiff contends that he was, he moves to remand the case to state court, arguing that Defendant's removal was untimely. ECF No. 6. Defendant, on the other hand, moves to quash service because he asserts that it was defective. ECF No. 9. Defendant also opposes remand, arguing that because he was never served, the 30-day removal clock never began, thereby rendering his removal timely. ECF No. 10. Though Plaintiff maintains that Defendant was served, alternatively, he asks that the Court permit substitute service on Defendant's counsel. ECF No. 14.

Though the Hague Service Convention permits service by mail in this instance, Plaintiff failed to properly effectuate service pursuant to NRS 14.070's requirements. Given that Defendant was never served, the 30-day removal clock never started, so his removal was timely. In turn, Plaintiff's request for substitute service is no longer necessary in light of defense counsel's agreement to waive service under Rule 4(d). As such, the Court grants Defendant's Motion to Quash Service, denies Plaintiff's Motion to Remand, and denies Plaintiff's Motion to Substitute Service as moot.

**I.      BACKGROUND**

In summer 2024, while driving a rental car, Defendant Shimon Ganon allegedly collided with Plaintiff Romeo Heagens—who was riding a bike on the sidewalk—and caused him injuries. *See generally* ECF No. 1-1. Plaintiff filed suit in state court at the beginning of 2025. *Id.*

1  But Plaintiff's efforts to locate and serve Defendant were unsuccessful. *See* ECF No. 6-3.
2  Plaintiff performed a skip trace and searched the Clark County Recorder's Office, the Clark
3  County Voter's Registrar, the Nevada Secretary of State, the Nevada Department of Corrections,
4  and the Nevada DMV. *Id.* Each turned up no results for Defendant. *Id.* at 5–6. Plaintiff also
5  called the phone number listed on the police report for the accident and messaged a "Shimon
6  Ganon" from Israel on Facebook, but the recipient of the call stated that it was the "wrong
7  number," and the Facebook message went unanswered. *Id.* at 2–4. After each of these efforts
8  resulted in a dead-end, Plaintiff resorted to service under NRS 14.070, Nevada's nonresident
9  motorist statute. *Id.* at 7–14.

10      NRS 14.070 allows a plaintiff to serve a motorist involved in a crash on Nevada roads
11  who cannot be found within the state by leaving a copy of the service of process, along with a $5
12  fee, with the DMV. But service is not deemed "sufficient" until the plaintiff (1) sends notice of
13  service and a copy of the process by registered or certified mail to the defendant; (2) receives a
14  return receipt signed by the defendant or a U.S.P.S. return stating that the defendant refused to
15  accept delivery or could not be located, or that the address was insufficient; and (3) files an
16  affidavit of compliance with the original process and return receipt attached. Nev. Rev. Stat.
17  § 14.070(2).

18      Plaintiff left copies of the summons and complaint with the DMV and paid the fee. ECF
19  No. 6-3 at 7–8. The DMV accepted service. *Id.* at 11. Plaintiff also sent notice of service and a
20  copy of the process by registered mail to the address listed for Defendant on the police report,
21  which was located in Israel. *Id.* at 9–14. But on March 7, 2025, the same day that Plaintiff mailed
22  the documents, he filed an affidavit of compliance *without* receiving nor attaching the return
23  receipt. *Id.* at 2–14.

24      A little over a month later, on April 8, 2025, Defendant removed the case to federal court.
25  ECF No. 1. Plaintiff moved to remand the case to state court the next day, contending that
26  Defendant was served on March 7, 2025—when Plaintiff filed his affidavit of compliance—
27  making Defendant's removal a day late. ECF No. 6. But Defendant, maintaining that he was

28                                      2

never properly served, opposed remand and moved to quash the service. ECF Nos. 9 and 10. Plaintiff then asked the Court, alternatively, to permit substitute service on Defendant's counsel. ECF No. 14. Defendant, however, waived service in response. ECF Nos. 16 and 17. Though Defendant has since waived service, the Court still must determine whether he was properly served on March 7, 2025, as Plaintiff contends, to resolve whether removal was timely.

## II.    ANALYSIS

The parties do not dispute that they are diverse, nor that the amount in controversy exceeds $75,000. ECF Nos. 6 and 10. Their sole disagreement concerns whether Defendant was properly served on March 7, 2025 and, in turn, whether Defendant's removal was timely. ECF Nos. 6, 9, 10, and 13. Because resolution of each motion hinges on service (or lack thereof), the Court must determine whether Plaintiff effectuated service in line with NRS 14.070's requirements. *See Whidbee v. Pierce Cnty.*, 857 F.3d 1019, 1023 (9th Cir. 2017) ("When a case is removed from state court to federal court, the question whether service of process was sufficient prior to removal is governed by state law.") (citations omitted).

Defendant contends that to properly serve an international defendant from Israel, Plaintiff needed to effectuate service pursuant to the Hague Convention, which preempts inconsistent methods of service under state law. ECF No. 9 at 3. Proper service, Defendant asserts, would require Plaintiff to translate all the documents into Hebrew and deliver copies of each document to Israel's Central Authority. *Id.* at 5. Defendant argues that regardless of the Hague Convention's requirements, Plaintiff could not resort to service via NRS 14.070 because he did not first exercise due diligence, and service was never completed because Plaintiff did not attach a return receipt to his affidavit of compliance as the statute required. ECF No. 10 at 6.

Plaintiff responds that "substantial compliance" with NRS 14.070 was sufficient to serve Defendant. ECF No. 13 at 2. He asserts that he did "everything he could have possibly done" to comply with the requirements because he requested, but did not ultimately receive, a return receipt. *Id.* He submits that to this day, the Postal Service shows that the mail is "not trackable" and attributes this shortcoming to the fact that Israel is at war. *Id.*; ECF No. 13-2.

3

**A. Plaintiff failed to properly effectuate service under NRS 14.070.**

The Hague Service Convention[1] "preempts inconsistent methods of service prescribed by state law in all cases to which it applies." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699 (1988). The Convention applies when the forum state's law requires documents to be transmitted abroad as a necessary component of service. *Id.* at 700. Because NRS 14.070 required Plaintiff to send notice of service and a copy of the process to Defendant in Israel, the Convention applies here. *See* NEV. REV. STAT. § 14.070(2).

Though the Convention specifies certain approved methods of service and "preempts inconsistent methods of service" wherever it applies, it does not prohibit service by mail. *Water Splash, Inc. v. Menon*, 581 U.S. 271, 273 (2017). Article 10(a) of the Convention states that "[p]rovided the State of destination does not object," the Convention "shall not interfere with the freedom to send judicial documents, by postal channels, directly to persons abroad." The Supreme Court interpreted Article 10(a) to allow service by mail when two conditions are met: "first, the receiving state has not objected to service by mail; and second, service by mail is authorized under otherwise-applicable law." *Water Splash,* 581 U.S. at 284 (citing *Brockmeyer v. May*, 383 F.3d 798, 803–04 (9th Cir. 2004)).

Here, the two-part *Water Splash* test is satisfied. First, Israel has not objected to Article 10(a). *Israel – Declaration/Reservation/Notification*, HAGUE CONFERENCE ON PRIVATE INTERNATIONAL LAW (last visited July 14, 2025), https://www.hcch.net/en/notifications/?csid=405&disp=resdn. Second, the "otherwise-applicable law"—Nevada law—allows service by mail. *See Water Splash*, 581 U.S. at 284 ("Because the Court of Appeals concluded that the Convention prohibited service by mail outright, it had no occasion to consider whether *Texas law* authorizes the methods of service used by Water Splash.") (emphasis added). Nevada Rule of Civil Procedure 4.4(a) states that "[i]f a statute provides for service, the summons and complaint

---

[1] Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638 (hereinafter Hague Service Convention).

may be served under the circumstances and in the manner prescribed by the statute." And NRS 14.070 allows a plaintiff to serve a motorist who cannot be found within the state following a crash by mail. Such service, therefore, complies with the Convention.

But the Court's analysis does not end there. Where the Convention applies, service must comply with both the Convention *and* constitutional standards of due process. *Grupo Famsa v. Eighth Jud. Dist. Ct.*, 371 P.3d 1048, 1051 (Nev. 2016). So the Court must also determine whether Plaintiff properly effectuated service pursuant to NRS 14.070's requirements.

Before a plaintiff can resort to service via NRS 14.070, he must first demonstrate that, after due diligence, he cannot find the defendant within the state. *Browning v. Dixon*, 954 P.2d 741, 743–44 (Nev. 1998). "[T]here is no objective, formulaic standard for determining what is, or is not, due diligence." *Abreu v. Gilmer*, 985 P.2d 746, 749–50 (Nev. 1999). It "is not quantifiable by reference to the number of service attempts or inquiries into public records, but instead is measured by the qualitative efforts of a specific plaintiff seeking to locate and serve a specific defendant." *Id.* Due diligence must be "reasonably calculated" and "tailored to fit the circumstances of each case." *Id.* (citation omitted). And based on Plaintiff's extensive searches through records and databases as well as his efforts to contact Defendant by phone and social media—all of which yielded no results—the Court finds that Plaintiff exercised sufficient diligence to resort to service under the statute.

However, "substantial compliance" with NRS 14.070, an alternative service statute, is not sufficient to properly effectuate service. The Nevada Supreme Court strictly construes substitute service statutes and rules. *Brockbank v. Second Jud. Dist. Court*, 201 P.2d 299, 301 (Nev. 1948). And here, Plaintiff did not strictly comply with NRS 14.070 because he failed to attach a return receipt to the affidavit of compliance he filed in the state court. NEV. REV. STAT. § 14.070(2) ("[S]ervice shall be deemed sufficient upon the operator if. . . a return receipt signed by the defendant or a return of the United States Postal Service stating that the defendant refused to accept delivery or could not be located, or that the address was insufficient, and the plaintiff's affidavit of compliance therewith are attached to the original process and returned and filed in

1   the action in which it was issued.").

2   　　　While Plaintiff asserts that he could not strictly comply with NRS 14.070 because the war
3   in Israel is affecting the efficacy of international mail, other service methods were available.
4   NRS 14.070 includes a "cumulative substitute service provision" which states that "[t]he
5   foregoing provisions of this section with reference to the service of process upon an operator
6   defendant are not exclusive." Plaintiff could have, for example, served Defendant through
7   Israel's Central Authority. NEV. R. CIV. P. 4.3(b)(1)(A) ("[A]n individual. . . may be served at a
8   place outside of the United States by any internationally agreed means of service. . . such as
9   those authorized by the Hague Convention[.]"); Hague Service Convention art. 5. Yet, Plaintiff
10  did not attempt service by any other means after learning that the mail could not be located and a
11  return receipt could not be provided. Because Plaintiff did not strictly comply with NRS 14.070,
12  he did not properly serve Defendant. *See Harvest Found., LLC v. Alternative Med. Ass'n, LC*,
13  477 P.3d 368 (Nev. App. 2020) (unpublished) ("Here, AMA did not strictly comply with
14  NRS 14.030 because it did not send Harvest a copy of process by registered or certified mail as
15  the statute requires. . . Therefore, AMA did not properly serve Harvest under NRS 14.030.").

**B. Defendant's removal was timely because due to defective service, the 30-day removal clock never began.**

　　　The removal statute allows "any civil action" brought in state court, which could have been brought in federal court, to be removed to the federal court of the district "embracing the place where such action is pending." 28 U.S.C. § 1441(a). The statute governing removal procedure requires a defendant to remove the action within 30 days of the defendant's receipt "through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based[.]" *Id.* § 1446(b)(1). If a defendant removes the case after the 30-day time limit has run out, then removal is improper. *Mayes v. Am. Hallmark Ins. Co. of Texas*, 114 F.4th 1077, 1078 (9th Cir. 2024) (citation omitted).

　　　The 30-day removal time limit starts to run only when the defendant has received the complaint *and* has been formally served. *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S.

344, 345 (1999) (removal clock "is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after and apart from service of the summons, but not by mere receipt of the complaint unattended by any formal service."). Even though this time limit does not *start* until the defendant has both received the complaint and been served, that does not mean that a defendant must wait until both have been accomplished to remove the case. *Mayes*, 114 F.4th at 1079. "The plain text of § 1446(b)(1) sets a deadline for removal, not a 'window' for removal." *Id.* So while a state court action must have *commenced*—typically through the filing of a complaint—before an action is removable, formal service is not a prerequisite. *Id.*; *Casola v. Dexcom, Inc.*, 98 F.4th 947, 955, 965 (9th Cir. 2024) (a defendant must wait until the state case "becomes a 'pending' 'civil action' before removing the matter to federal court.").

Here, the state court action commenced on January 1, 2025 when Plaintiff filed his complaint. NEV. R. CIV. P. 3 ("A civil action is commenced by filing a complaint with the court."); ECF No. 1-1. Although Plaintiff claims service was completed on March 7, 2025, making the removal deadline April 7, 2025, Defendant was never properly served. *Supra* section II.A. Because the 30-day removal clock never began, Defendant's April 8, 2025 removal was timely. The Court therefore denies Plaintiff's Motion to Remand.

### III.   CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's Motion to Quash Service (ECF No. 9) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Remand (ECF No. 6) is **DENIED**.

/ / /

/ / /

/ / /

7

1 **IT IS FURTHER ORDERED** that Plaintiff's Motion to Substitute Service (ECF No. 14) is **DENIED as moot**.

DATED this 15th day of July 2025.

```
                                        _____
                                        BRENDA WEKSLER
                                        UNITED STATES MAGISTRATE JUDGE
```